**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| **ROBERT DONOGHUE, ROBERT KICKLIGHTER, THOMAS ADAMS, TERRI BARRETT and MARK DAIELLO, for Themselves and all others similarly situated,** | : : : : : : | |
| **Plaintiff,** | : : | **Civil Action No. _____** |
| **v.** | : : | **COLLECTIVE / CLASS ACTION** |
| **VERIZON COMMUNICATIONS, INC., TESINC LLC, EVANS SPLICING, LLC and PS SPLICING, LLC,** | : : : : | **JURY DEMANDED** |
| **Defendants.** | : : | |

_____

## COLLECTIVE AND CLASS ACTION COMPLAINT

Robert Donoghue, Robert Kicklighter, Thomas Adams, Terri Barrett and Mark Daiello ("Plaintiffs"), by and through their undersigned attorneys, hereby make the following allegations against Verizon Communications, Inc., Tesinc, LLC, Evans Splicing, LLC, and PS Splicing, LLC (collectively, "Defendants") concerning their acts and status upon their actual knowledge and concerning all other matters upon information, belief, and the investigation of their counsel:

## NATURE OF ACTION

1.       Plaintiffs contend that Defendants, acting in a joint venture or as joint employers, violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.* ("MWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1 *et seq.* ("WPCL") and the New Jersey Wage and Hour Law, N.J. Stat. Ann. §§ 34:11-56a *et seq.* and N.J.A.C. 12:56-5.1 *et seq.* ("NJWHL") by misclassifying replacement wireline workers as independent contractors and failing to pay them required overtime wages.  Specifically, rather than pay the required 1½

1

overtime premium rate for all time worked over 40 hours per week, Defendants implemented a common scheme to pay Plaintiffs and the Class members at their straight-time rate of pay for all their overtime work in violation of the FLSA and state wage laws.

2.      The Defendant entities are inter-related and commonly-controlled businesses that, among other things, construct, install and service cable television, telephone, and internet services across the country, including the states of Pennsylvania and New Jersey.

3.      Defendant, Verizon Communications, Inc. (hereinafter referred to as "Verizon"), is responsible for a far reaching "fissured employment" scheme. [1]  In order to ensure services to its customers during a union strike, Verizon engaged hundreds of replacement wireline workers – including the Plaintiffs in this case – to service copper and fiber cabling used for cable television, telephone and internet.  Although Verizon required these workers to perform their work according to Verizon's exacting policies and procedures, Verizon disclaimed any legal relationship with these workers, tagging them instead as "independent contractors" of subordinate entities, including Tesinc, LLC, Evans Splicing, LLC, and PS Splicing, LLC.  But it is the economic reality of the relationship – not Verizon's self-serving labels – that controls whether Plaintiffs meet the definition of an "employee" under the FLSA and comparable state wage and hour laws.

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintain tight control over the method, manner, quantity, and quality of production).  The practice of outsourcing an employer's responsibilities and obligations to subordinate entities and subcontractors is highly profitable for companies like Verizon, but results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws.  *See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014); David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction"; pursuant to 28 U.S.C. §1331, because Plaintiffs' claims arise under the FLSA; pursuant to  28 U.S.C. §1332(a)(1), because the matter in controversy exceeds $75,000.00, exclusive of interest and costs and the Parties are residents of different states; and pursuant to 28 U.S.C. §1332(d)(2), because the amount in controversy exceeds $5,000,000.00 and the Parties are residents of different states.

5.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, because these claims arise from the same occurrences and transactions as Plaintiffs' FLSA claims (i.e., Defendants' misclassification scheme and failure to pay legally-mandated wages) and are so related to Plaintiffs' FLSA claim as to form part of the same case or controversy.

6.      Venue lies in this District under 28 U.S.C. §1391(b), because Mr. Donoghue, Mr. Kicklighter and Mr. Daiello all worked for Defendants in this District and suffered the losses at issue in this District, because Defendants are alleged to have engaged in the wrongful conduct at issue in this District and because a substantial part of the events and omissions giving rise to the claims pled in this Complaint occurred within this District.

## PARTIES

7.      Plaintiff Robert Donoghue is an adult citizen of the State of Florida who resides in Cape Coral, FL.  Mr. Donoghue worked on a full-time basis providing cable splicing services for Verizon in Pennsylvania from around April 2016 to June 2016.  Mr. Donoghue has submitted an opt-in consent form to join this lawsuit.

8.     Plaintiff Robert Kicklighter is an adult citizen of the State of South Carolina who resides in Liberty, S.C.   Mr. Kicklighter worked on a full-time basis providing cable splicing services for Verizon in Pennsylvania from around April 2016 to June 2016.  Mr. Kicklighter has submitted an opt-in consent form to join this lawsuit.

9.     Plaintiff Mark Daiello is an adult citizen of the State of Florida who resides in Naples, FL.  Mr. Daiello worked on a full-time basis providing cable splicing services for Verizon in Pennsylvania from around April 2016 to June 2016.  Mr. Daiello has submitted an opt-in consent form to join this lawsuit.

10.     Plaintiff Thomas Adams is an adult citizen of State of Florida who resides in Jacksonville, FL.  Mr. Adams worked on a full-time basis providing cable splicing services for Verizon in New Jersey from around April 2016 to June 2016.  Mr. Adams has submitted an opt-in consent form to join this lawsuit.

11.     Plaintiff Terri Barrett is an adult citizen of the State of Florida who resides in Seffner, FL.  Ms. Barrett worked on a full-time basis providing cable splicing services for Verizon in New Jersey from around April 2016 to June 2016.  Ms. Barrett has submitted an opt-in consent form to join this lawsuit.

12.     Defendant Verizon Communications, Inc. ("Verizon") is a Delaware company with a principal place of business in New York, N.Y.  Verizon is a telecommunications company that designs, builds and operates networks, information systems and mobile technologies.  *See http://www.verizon.com/about/our-company/overview*.

13.     Defendant Tesinc, LLC ("Tesinc") is a Delaware company with a principal place of business in Tampa, FL.  TESINC is a national provider of engineering, drafting and technical

services for America's largest telecommunications and information companies, including Verizon. *See http://www.tesinc-llc.com.*

14.     Defendant Evans Splicing, LLC ("Evans") is a Mississippi limited-liability company with a principal place of business in Picayune, MS.  Evans is a company that provides line splicing services for the telecommunications industry, including Verizon.

15.     Defendant PS Splicing, LLC ("PS") is a North Carolina limited-liability company with a principle place of business in Oxford, NC.  PS is a company that provides splicing services for the telecommunications industry, including Verizon.  *See http://www.pssplicingllc.com/default .html.*

16.     Throughout the relevant period, Defendants were actively engaged in the business of providing cable television, broadband internet and telephone services to business and residential customers and maintaining the equipment necessary to provide these services.

## BACKGROUND FACTS

17.     Throughout the relevant period, Defendants have been in the business of providing cable television, broadband internet and telephone services and maintaining the equipment necessary to provide these services.

18.     On April 13, 2016, around 36,000 Verizon wireline associates went on strike in ten states along the east coast of the United States, including: Massachusetts, Virginia, Rhode Island, Connecticut, Delaware, Maryland, New Jersey, New York, Pennsylvania, and Washington, D.C. *See https://en.wikipedia.org/wiki/Verizon_strike_of_2016.*

19.     That same day, Verizon announced that it would be hiring hundreds of replacement wireline workers to ensure a continuity of service and support to its customers: "As part of the company's business continuity plans, starting immediately, trained non-union employees will

cover for striking workers and provide customers with the support and assistance they need and expect." *See* *http://www.verizon.com/about/news/cwa-and-ibew-leaders-call-strike-against-verizon-and-its-customers*.

20. These replacement wireline workers were available when the strike began because Verizon had made extensive advance preparations: "Over the past year, Verizon took extensive measures to ensure its customers would be minimally impacted by any potential work stoppage. Thousands of non-union Verizon employees and business partners have undergone extensive training in various network and customer service functions, including FiOS and copper repair and network maintenance and general customer service functions." *Id.* *See* *http://www.verizon.com/about/news/verizon-prepares-strike-readiness-plans*.

21. Verizon typically trained the replacement wireline workers to maintain its networks and equipment in its own facility: "Since last spring, many of these employees took part in extensive network training sessions at a high-tech, custom designed business continuity training center in Northern Virginia, created especially for this potential event." *Id.* *See http://www.verizon.com/about/news/verizon-prepares-strike-readiness-plans*.

22. On May 30, 2016, Verizon reached a tentative agreement to send its striking wireline employees back to work and laid-off the replacement workers who had been brought in during the strike. *See http://www.verizon.com/about/news/verizon-reaches-tentative-agreements-unions-representing-wireline-employees*.

23. Plaintiffs and Class members were replacement wireline workers during the Verizon strike. Their principal job duty was to service copper and fiber cabling used to provide cable television, telephone and internet services to Verizon customers.

24.     Evans and PS hired the Named Plaintiffs and Class members to perform replacement work for Verizon during the strike under contracts with Tesinc.

25.     Tesinc authorized Evans and PS to hire the Named Plaintiffs and Class members as replacement workers during the strike pursuant to its contract with Verizon.

26.     Throughout the duration of their work, Evans, PS, Tesinc and Verizon classified and paid Plaintiffs and the Class members as independent contractors.

27.     Although Plaintiffs and the Class members were classified as independent contractors, their relationship with Defendants had many characteristics of an employer-employee relationship.  For example, Defendants ran thorough background checks on Plaintiffs and the Class members, made them complete I-9 Employment Eligibility Verification Forms, required them to participate in mandatory "on-boarding" programs and safety meetings, withheld money from their paychecks for worker's compensation, and took other deductions from their pay.

## FACTS RELATING TO THE NAMED PLAINTIFFS

28.     Throughout the strike, Verizon supervisors would contact Plaintiffs on an almost daily basis to assign them work orders.

29.     Work orders from Verizon supervisors directed Plaintiffs to a specific assigned location and assigned them specific duties to perform at that location.  The work orders and directives given by Verizon supervisors required Plaintiffs to perform their assigned jobs in a specific order from which they could not deviate.

30.     After completing each job, Plaintiffs would report back to their Verizon supervisor, providing information about the completed job and receiving authorization to travel to their next assignment.

31.     In addition to the tasks Defendants designated as compensable, Plaintiffs performed other work for Defendants including: attending meetings, completing paperwork, maintaining work vehicles and stocking vehicles with inventory and supplies.  Plaintiffs were not properly paid for these tasks, which were integral and indispensable to their principal job: servicing the copper and fiber cables used for Verizon's cable television, telephone and internet services.

32.     Throughout the strike, Plaintiffs and the Class members routinely worked more than forty hours per week for Defendants, but were not paid at least one-and-one-half times their regular rate of pay for any work done beyond forty hours in any workweek.

33.     During the relevant period, Mr. Donoghue regularly worked and recorded 12-13 hours per day, seven days per week, for an average of about 85 hours each week.  Defendants paid Mr. Donoghue between $70.00 and $80.00 per hour.  For all hours he worked over forty in a workweek, Defendants paid Mr. Donoghue his straight-time rate of pay rather than a "time-and-a-half" overtime premium rate.

34.     During the relevant period, Mr. Kicklighter regularly worked and recorded 12-13 hours per day, seven days per week, accumulating between 84 and 91 hours per week.  Defendants paid Mr. Kicklighter $80.00 per hour.  For all hours he worked over forty in a workweek, Defendants paid Mr. Kicklighter his straight-time rate of pay rather than a "time-and-a-half" overtime premium rate.

35.     During the relevant period, Mr. Daiello regularly worked and recorded 12-13 hours per day, seven days per week, accumulating between 84 and 91 hours per week.  Defendants paid Mr. Daiello $70.00 per hour.  For all hours he worked over forty in a workweek, Defendants paid Mr. Daiello his straight-time rate of pay rather than a "time-and-a-half" overtime premium rate.

36.     During the relevant period, Mr. Adams regularly worked and recorded 12-13 hours per day, seven days per week, accumulating between 84 and 91 hours per week.  Defendants paid Mr. Adams between $80.00 and $90.00 per hour.  For all hours he worked over forty in a workweek, Defendants paid Mr. Adams his straight-time rate of pay rather than a "time-and-a-half" overtime premium rate.

37.     During the relevant period, Ms. Barrett regularly worked and recorded 12 hours per day, seven days per week, accumulating between 80 and 84 hours per week.  Defendants paid Ms. Barrett $80 per hour.  For all hours worked over forty in a workweek, Defendants paid Ms. Barrett her straight-time rate of pay rather than a "time-and-a-half" overtime premium rate.

## JOINT EMPLOYMENT STATUS ALLEGATIONS

38.     Throughout the relevant period, Verizon, Tesinc, PS and Evans, acting in a joint venture or as joint employers, formulated, approved, controlled and engaged in the improper practices described in this Complaint, so are jointly responsible for these practices

39.     Throughout the relevant period, Verizon, Tesinc, PS and Evans have been an integrated enterprise with inter-related operations, systems, policies, practices and labor relations.

40.     Throughout the relevant period, Verizon, Tesinc, PS and Evans served as each other's agents and worked in concert to accomplish the actions pled here.

41.     Throughout the relevant period, Verizon has been actively engaged in the "day-to-day" management of work performed by replacement workers under its contracts with Tesinc, PS and Evans.

42.     Verizon, Tesinc, PS and Evans provided Plaintiffs and the Class members with materially identical policies and practices relating to the performance of their work during the strike.

43. Verizon, Tesinc, PS and Evans required Plaintiffs and the Class members to follow the same policies and procedures, including those for tracking work and recording time, during the strike.

44. Verizon, Tesinc, PS and Evans set the value of the wages Plaintiffs and the Class members were paid for their work during the strike and the policies and procedures relating to the payment of these wages.

45. Verizon, Tesinc, PS and Evans subjected Plaintiffs and the Class members to the same exempt classification and agreed not to pay them at an overtime premium rate of pay for any work they performed beyond forty hours in any workweek.

46. Plaintiffs and the Class members performed their work during the strike using tools, materials and procedures promulgated and approved by Verizon, Tesinc, PS and Evans.

47. Plaintiffs and the Class members were supervised and evaluated in the performance of their work during the strike according to criteria and standards set by Verizon, Tesinc, PS and Evans.

48. Defendants are joint employers of Plaintiffs and the Class members under the FLSA, MWA, WPCL and NJWHL because Defendants each had the right to: hire and fire Plaintiffs and the Class members, set their wages, control their work, direct the manner in which they performed their work, inspect and supervise their work, promulgate policies and procedures governing their employment (including the employment classification work, timekeeping and compensation policies and procedures at issue here) and enforce these policies and procedures.

49. The net effect of Defendants' policies and practices, instituted and approved by Verizon managers, is that Defendants willfully failed to pay Plaintiffs and the Class members earned overtime premium compensation for all hours worked over forty in a workweek in order to

10

save payroll costs. Defendants enjoyed ill-gained profits at the expense of these replacement wireline workers.

50.     Throughout the relevant period, the degree of control Defendants exercised over the work Plaintiffs and the Class members performed was indicative of an employer-employee relationship (and not an independent contractor relationship) because, among other things, Defendants:

a.      had sole discretion to hire and fire Plaintiffs and the Class members for any reason, or no reason;

b.      had sole discretion to require Plaintiffs and Class members to attend meetings and training sessions, and determine the duration, frequency and content of those meetings and training sessions;

c.      had sole discretion to determine the type, amount and frequency of work assigned to Plaintiffs and Class members each day, and did not permit Plaintiffs and the Class members to reject work assignments for any reason;

d.      had sole discretion to determine what methods, procedures and tools Plaintiffs and the Class members used in performing their work;

e.      had sole discretion to schedule the time of each work assignment given to Plaintiffs and the Class members as well as set the duration allotted for each assignment;

f.      had sole discretion to change the timing and location of work assignments given to Plaintiffs and the Class members, or to add new assignments to their workload, at any point during the day;

g.      had sole discretion to suspend or withhold work from Plaintiffs and the Class members and routinely withheld work for any reason;

h.      required Plaintiffs and Class members to use a PDA device to constantly update the progress of their work throughout the day;

i.      tracked the progress of Plaintiffs and Class members through daily calls they received from Verizon supervisors.; and,

j.      inspected the quality of work performed by Plaintiffs and the Class members.

51.     Throughout the relevant period, the degree of financial control Defendants exercised over Plaintiffs and the Class members was indicative of an employer-employee relationship (and not of an independent contractor) because, among other things, Defendants:

    a.     had sole discretion to set the rate of pay earned by Plaintiffs and the Class members;

    b.     required Plaintiffs and Class members to perform work only for Verizon, thus controlling (and limiting) their ability to earn income from other sources;

    c.     had sole discretion to determine when, how frequently, and under what circumstances, Plaintiffs and the Class members would be assigned work, as well as which work they would be offered;

    d.     had sole discretion to withhold work from Plaintiffs and the Class members for causing problems, complaining about Defendants' practices or violating Defendants' policies and practices;

    e.     had the sole discretion to determine the procedures for requiring corrective action following any mistakes committed by Plaintiffs and the Class members, including whether economic penalties would be assessed and the size of those penalties; and

    f.     had sole discretion to determine when, how frequently, and under what circumstances, Plaintiffs and the Class members would be assigned work, as well as which work they would be offered.

52.     Throughout the relevant period, Defendants' relationship with Plaintiffs and the Class members bore additional hallmarks of an employer-employee relationship (and not of an independent contractor relationship) because:

    a.     the work performed by Plaintiffs and the Class members was a key aspect of, and integral to, Defendants' business;

    b.     Defendants exercised significant direction and control over the activities of Plaintiffs and the Class members;

    c.     Defendants controlled the geographic territory in which Plaintiffs and the Class members were offered, and performed, work;

    d.     Defendants conducted inspections of the work performed by Plaintiffs and the Class members, prepared reports describing any

12

problems or deviations they found, and used these reports to control the flow of work and income to them;

e.    Defendants had sole discretion to determine, issue, and modify the quality standards Plaintiffs and the Class members were required to meet in performing their assigned tasks;

f.    Defendants had sole discretion to establish, amend, and revise policies and procedures pertaining to the work performed by Plaintiffs and the Class members;

g.    Defendants reserved a unilateral right to terminate Plaintiffs and the Class members for engaging in a wide range of behavior without any opportunity to cure; and

h.    Defendants had sole discretion to transfer work assignments among Plaintiffs and the Class members.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

53.    Plaintiffs bring their FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for the following group:

> All individuals who worked for Defendants as replacement wireline workers in the States of Massachusetts, Virginia, Rhode Island, Connecticut, Delaware, Maryland, New Jersey, New York, Pennsylvania and Washington D.C. between April 1, 2016 and June 30, 2016 and were improperly denied overtime wages.

54.    Plaintiffs belong to the collective group they seek to represent, because they worked for Defendants as replacement wireline workers between April 1, 2016 and June 30, 2016, were classified as independent contractors and were denied overtime wages.

55.    Although Plaintiffs and the collective group members worked in different states, this action may be properly maintained as a collective action because, among other things:

a.    they worked under the same joint employment scenario;

b.    they worked under the same material terms and conditions of employment;

c.    they performed the same job duties and had the same job-related responsibilities;

13

    d.    they received common training and "on-boarding" instructions;

    e.    they were governed by materially identical policies, practices and systems concerning work hours;

    f.    they were governed by materially identical timekeeping policies, practices and systems;

    g.    they were governed by materially identical compensation policies, practices and systems; and

    h.    they were governed by the same policies, practices and systems concerning overtime hours and wages.

56.    Plaintiffs and the collective group members do not meet any test for exemption under the FLSA.

57.    This action is properly maintained as a collective action because Plaintiffs are similarly situated to the members of the collective group with respect to their job titles, job descriptions, training requirements, job duties, lack of required overtime wages, and the other common facts alleged in this Complaint.

58.    Defendants encouraged, suffered and permitted Plaintiffs and the collective group to work more than forty hours per week without ensuring that they were paid at an overtime premium rate for any of these hours.

59.    Defendants had ample reason to know that Plaintiffs and the collective group members were working well over forty hours each week during the strike and that this work should have been paid at an overtime premium rate.  Nonetheless, as described above, Defendants maintained a scheme to deprive Plaintiffs and the collective group members of any overtime compensation.

60.    Defendants' conduct, as alleged herein, was willful and has caused significant damage to Plaintiffs and the collective group.

61.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the collective class.  Plaintiffs request that the Court authorize notice to the members of the collective group to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid wages, including unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

62.     Plaintiffs estimate that the collective group includes at least 100 members.  The precise number of collective group members can be easily ascertained with Defendants' payroll and personnel records, among other documents.  Given the composition and size of the collective group, its members may be informed of the pendency of this action directly *via* U.S. mail and e-mail.

**PENNSYLVANIA AND NEW JERSEY CLASS ACTION ALLEGATIONS**

63.     Plaintiffs bring their MWA, WPCL and NJWHL claims as a class action pursuant to Fed. R. Civ. P. 23.

64.     The Pennsylvania Class is defined as:

> All individuals who worked for Defendants as replacement wireline workers in the Commonwealth of Pennsylvania between April 1, 2016 and June 30, 2016 and were improperly denied overtime wages.

65.     Plaintiffs Donoghue, Kicklighter and Daiello belong to the Pennsylvania Class, because they worked for Defendants as replacement wireline workers in the Commonwealth of Pennsylvania between April 1, 2016 and June 30, 2016, were classified as independent contractors and were denied overtime wages.

66.     The New Jersey Class is defined as:

> All individuals who worked for Defendants as replacement wireline workers in the State of New Jersey between April 1, 2016 and June 30, 2016 and were improperly denied overtime wages.

15

67.     Plaintiffs Adams and Barrett belong to the New Jersey Class, because they worked for Defendants as replacement wireline workers in the State of New Jersey between April 1, 2016 and June 30, 2016, were classified as an independent contractors and were denied overtime wages.

68.     Plaintiffs' claims for violation of the MWA, WPCL and NJWHL may be maintained on a class-wide basis because their claims satisfy the requirements of Fed. R. Civ. P. 23 as follows:

69.     The members of both putative Classes are so numerous that their joinder would be impracticable.  During the relevant period, at least 100 people are believed to have worked for Defendants as replacement wireline workers in both Pennsylvania and New Jersey.

70.     Material questions of law or fact common to the members of both putative Classes predominate over any individual issues, including:

      a.     Whether Defendants misclassified Plaintiffs and the members of both putative Classes as independent contractors;

      b.     Whether Defendants failed to compensate Plaintiffs and the members of both putative Classes for all the work they were required, encouraged or permitted to perform;

      c.     Whether Defendants failed to pay Plaintiffs and the members of both putative Classes at an overtime premium rate for all hours worked in excess of 40 per week;

      d.     Whether Defendants willfully failed to comply with all applicable state wage and hour laws; and

      e.     Plaintiffs anticipate that Defendants will raise defenses that are common to the members of both putative Classes.

71.     Plaintiffs' claims are typical of the claims belonging to the members of both putative Classes in that they are similarly-situated employees who performed similar work under similar terms, conditions, policies and practices and, as a result, have been similarly harmed.

72.     This action may be properly maintained as a class action because Plaintiffs will fairly and adequately assert and protect the interests of the members of both putative Classes as follows:

    a.    there is no apparent conflict of interest between Plaintiffs and the members of both putative Classes, especially in light of the relatively small value of each Class member's claim and the costs and burdens associated with bringing individual wage claims;

    b.    Plaintiffs' attorneys have significant experience in the litigation of complex civil and class action matters in this Court, and will adequately represent the interests of the Class; and

    c.    Plaintiffs have access to adequate financial resources to assure that the interests of the Class will not be harmed because, consistent with the Pennsylvania Rules of Professional Conduct, Plaintiffs' counsel have agreed to advance the costs and expenses of this litigation contingent upon the outcome of the case.

73.     This action may be properly maintained as a class action because it will provide a fair and efficient method for adjudication of the issues presented by this controversy as follows:

    a.    common questions of law or fact predominate over any questions affecting only individual members, as Plaintiffs seek to remedy a common legal grievance, namely Defendants' failure to pay all wages owed as a result of their improper misclassification as exempt employees;

    b.    no difficulties are likely to be encountered in the management of this litigation as a class action, given that Defendants' records will assist in identifying the members of both putative Classes and verifying the value of their claims;

    c.    this forum is particularly appropriate for adjudicating these claims as this Court has significant experience with class action litigation; and

    d.    the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims.

74.     Allowing Plaintiffs' Pennsylvania and New Jersey wage law claims to proceed as a class action will be superior to requiring the individual adjudication of each Class member's claim, since requiring hundreds of hourly-paid employees to file and litigate individual wage claims would cause an undue burden on Defendants, the Class members and the Courts.  Class action treatment will allow a large number of similarly-situated persons to prosecute their commons claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually.  Moreover, as the damages suffered by each Class member are relatively small, the expenses and burdens associated with individual litigation would make it difficult for plaintiffs to bring individual claims.  Further, the presentation of separate actions by individual Class members could create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of Class members to protect their interests.

**COUNT 1**
**Violation of the FLSA**
**(for the proposed multi-state collective group)**

75.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

76.     Verizon, Tesinc, PS and Evans are "employers" as defined by 29 U.S.C. § 203(d).

77.     The wages that Verizon, Tesinc, PS and Evans paid to Plaintiffs and the collective group members are "wages" as defined by 29 U.S.C. § 203(m).

78.     Verizon, Tesinc, PS and Evans all qualify as "enterprise[s] engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

79.     Plaintiffs and the collective group members are "employees" as defined by 29 U.S.C. § 203(e)(1).

80.     Plaintiffs and the collective group members are similarly-situated individuals within the meaning of 29 U.S.C. § 216(b).

81.     With certain exceptions not applicable here, 29 U.S.C. § 207(a)(1) mandates that employees must be paid an overtime premium rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

82.     The FLSA, 29 U.S.C. § 216(b), expressly allows private plaintiffs to bring collective actions to enforce an employers' failure to comply with its requirements

83.     Throughout the relevant period, Verizon, Tesinc, PS and Evans were obligated to comply with the FLSA's requirements, Plaintiffs and the collective group members were covered employees entitled to the FLSA's protections, and Plaintiffs and the collective group members were not exempt from receiving wages required by the FLSA for any reason.

84.     Verizon, Tesinc, PS and Evans violated the FLSA, and acted with reckless disregard of clearly applicable FLSA provisions, by knowingly suffering or permitting Plaintiffs and the collective group members to work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40 each week.

85.     Verizon, Tesinc, PS and Evans violated the FLSA, and acted with reckless disregard of clearly applicable FLSA provisions, by misclassifying Plaintiffs and the collective group members as independent contractors rather than employees, knowingly suffering or permitting them to work more than 40 hours per week and failing to ensure they were paid at an overtime premium rate for all hours beyond 40 each week.

86.     Plaintiffs and the collective group members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendants derived a direct and substantial benefit.

87.     Defendants have no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiffs and the collective group members all wages mandated by the FLSA.

## COUNT II
### Violation of the Pennsylvania Minimum Wage Act
### (for the Pennsylvania Class)

88.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

89.     The unpaid wages at issue in this litigation are "Wages" as defined by MWA § 3(d).

90.     Verizon, Tesinc, PS and Evans are "Employers" as defined in MWA § 3(g).

91.     Plaintiffs Donoghue, Kicklighter and Daiello (the "Pennsylvania Plaintiffs") and the Pennsylvania Class members are "employees" as defined in MWA § 3(h).

92.     Defendants were covered employers obligated to comply with the MWA's minimum wage and overtime requirements, and the Pennsylvania Plaintiffs and the Pennsylvania Class members were covered employees entitled to the MWA's protections.

93.     At no time did Defendants, the Pennsylvania Plaintiffs, or the Pennsylvania Class members fall under any exemption contained in MWA § 5.

94.     Throughout the relevant period, MWA § 4(c) required Defendants to pay the Pennsylvania Plaintiffs and the Pennsylvania Class members overtime compensation of "not less than one and one-half times the employee's regular rate" for all hours worked over 40 in a given workweek.

95.     Under the MWA, overtime is calculated based on the number of hours worked in a "workweek", defined in controlling regulations as "a period of 7 consecutive days".  *See* 34 Pa. Code § 231.42.

96.     Throughout the relevant period, Defendants violated MWA § 4(c) by, among other things, willfully and uniformly failing to pay the Pennsylvania Plaintiffs and the Pennsylvania Class members the legally mandated "time-and-a-half" overtime wages when they worked more than forty hours in a given workweek.

97.     Throughout the relevant period, MWA § 8 required Defendants to "keep a true and accurate record of the hours worked by each employee and the wages paid to each."

98.     In violating the MWA, Defendants acted willfully and with reckless disregard of clearly-applicable MWA provisions.

99.     The Pennsylvania Plaintiffs and the Pennsylvania Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendants derived a direct and substantial benefit.

100.     Defendants have no good faith justification or defense for the conduct detailed above, or for failing to pay the Pennsylvania Plaintiffs and the Pennsylvania Class members all wages mandated by the MWA.

101.     MWA § 13 expressly allows private plaintiffs to bring civil actions to enforce an employers' failure to comply with the Act's requirements.

## COUNT III
### Violation of the Pennsylvania Wage Payment and Collection Law
### (for the Pennsylvania Class)

102.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

103.     The WPCL gives employees the right to enforce *any* legal right to wages due, including wages owed under a written contract.

104.    Defendants were "employers" as defined by WPCL § 2.1 and obligated to comply with the WPCL's wage payment requirements.

105.    The Pennsylvania Plaintiffs and the Pennsylvania Class members were employees entitled to the WPCL's protections.

106.    Throughout the relevant period, WPCL § 3(a) required Defendants to pay the Pennsylvania Plaintiffs and the Pennsylvania Class members all wages due to their employees on regular paydays designated in advance.

107.    Throughout the relevant period, Defendants violated WPCL § 3(a) by willfully and consistently failing to pay the Pennsylvania Plaintiffs and the Pennsylvania Class members all overtime wages due on regular paydays designated in advance.

108.    WPCL § 7 provides that no provision of the WPCL can be contravened or set aside by a private agreement.

109.    Defendants have no good faith justification or defense for engaging in the conduct described above, or for failing to pay the Pennsylvania Plaintiffs and the Pennsylvania Class members all wages mandated by the WPCL.

110.    In violating the WPCL, Defendants acted willfully and with reckless disregard of clearly applicable WPCL provisions.

111.    The Pennsylvania Plaintiffs and the Pennsylvania Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendants derived a direct and substantial benefit.

112.     WPCL §§ 9.1 and 10 expressly allow private Plaintiffs to institute a civil action to enforce an employers' failure to comply with the Act's requirements, and to recover any unpaid overtime wages, attorneys' fees and litigation costs, liquidated damages, and prejudgment interest.

113.     WPCL § 9.1(a) provides that "[a]ny employee or group of employees . . . may institute actions provided under this act", and thus permits private plaintiffs to pursue class action status for their WPCL claims.

### COUNT IV
### Violation of the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56(a) *et seq.* (for the New Jersey Class)

114.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

115.     Defendants are "employers" as defined by the NJWHL.  *See* N.J.S.A. § 34:11-56(a)(1)(g).

116.     Plaintiffs Adams and Barrett (the "New Jersey Plaintiffs") are "employees" as defined by NJWHL. *See* N.J.S.A. § 34:11-56(a)(1)(h).

117.     The overtime wages sought by this claim are "wages" as defined by N.J.S.A 34:11-56(a)(1)(d).

118.     Throughout the relevant period, Defendants have been subject to the New Jersey Wage and Hour Act and the enabling Regulations noted here.

119.     The New Jersey Wage and Hour Act provides that: "Every employer shall pay to each of his employees [*sic*] wages at a rate of not less than 1½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week...."  *See* N.J.S.A 34:11-56(a)(4).

120.    New Jersey Wage and Hour Regulations further provide that employees shall receive the minimum hourly wage rate set by section 6(a)(1) of the Federal "Fair Labor Standards Act or the rate provided under N.J.S.A. 34:11-56A4, whichever is greatest.  *See* N.J.A.C. 12:56-3.1.

121.    As alleged herein, Defendants violated the New Jersey Wage and Hour Act and its enabling Regulations through common, company-wide policies that caused the New Jersey Plaintiffs and the New Jersey Class members to be improperly paid at their regular rate of pay for all of the overtime hours they worked throughout the duration of the Verizon strike.

122.    As alleged herein, Defendants also violated the New Jersey Wage and Hour Act by failing to keep accurate contemporaneous records of all hours the New Jersey Plaintiffs and the New Jersey Class members worked.  *See* N.J.S.A 34:11-56(a)(20).

123.    Throughout the relevant period, the New Jersey Plaintiffs and the New Jersey Class members were entitled to the protections provided by the New Jersey Wage and Hour Act and its enabling Regulations, and were not exempt from these protections for any reason.

124.    By engaging in the conduct alleged herein, Defendants acted willfully and/or with reckless disregard for the New Jersey Plaintiffs' and New Jersey Class members' rights under New Jersey Law.

125.    N.J.S.A 34:11-56(a)(25) expressly allows private plaintiffs to bring a civil action to enforce an employers' failure to comply with the requirements of the Act.

126.    N.J.S.A 34:11-56(a)(25) expressly provides that an agreement between the employer and employee to work for less than the wages required by the Act is not a defense to an action seeking to recover those unpaid wages.

24

## COUNT V
### Violation of N.J.A.C. 12:56-5.1 *et seq.*
### Failure To Pay For All Hours Worked
### (for the New Jersey Class)

127.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

128.    The New Jersey Wage and Hour Regulations establish rules to effectuate the New Jersey State Wage and Hour Law ("the Act") provide sanctions for noncompliance and are expressly applicable to wages and hours subject to the Act.  *See* N.J.A.C. 12:56-1.1.

129.    The New Jersey Plaintiffs and New Jersey Class Members are "employees" as defined by N.J.A.C. 12:56-2.1.

130.    Defendants are "employers" as defined by N.J.A.C. 12:56-2.1.

131.    The overtime premium wages the New Jersey Plaintiffs seek are "wages" as defined by N.J.A.C. 12:56-2.1.

132.    The New Jersey Wage and Hour Regulations provide that a violation of the Act occurs when an employer: "Pays… wages at a rate less than the rate applicable under this chapter or any wage order issued pursuant thereto."  *See* N.J.A.C. 12:56-1.2(a)(6).

133.    The New Jersey Wage and Hour Regulations also provide that "Employees entitled to the benefits of the Act shall be paid for all hours worked."  *See* N.J.A.C. 12:56-5.1.

134.     As alleged herein, Defendants violated the New Jersey Wage and Hour Regulations through common, company-wide policies that caused the New Jersey Plaintiffs and New Jersey Class members to be improperly denied required overtime premium wages for overtime hours they actually worked throughout the Verizon strike.

135.    As alleged herein, Defendants also violated the New Jersey Wage and Hour Regulations by failing to keep accurate contemporaneous records of all hours the New Jersey

25

Plaintiffs and New Jersey Class members worked.  *See* N.J.A.C. 12:56-1.2(a)(2) and 12:56-4.1.

136.    Throughout the relevant period, Defendants have been subject to the New Jersey Wage and Hour Regulations noted here and the New Jersey Plaintiffs and New Jersey Class members have not been exempt from application of these protections for any reason.

137.    By engaging in the conduct alleged herein, Defendants have acted willfully and/or with reckless disregard for the New Jersey Plaintiffs' and New Jersey Class members' rights under New Jersey Law.

138.    The New Jersey Plaintiffs and the New Jersey Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been denied overtime premium wages for overtime work they performed, all of which provided Defendants with a direct and substantial benefit.

139.    N.J.S.A 34:11-56a25 expressly allows private plaintiffs to bring a civil action to enforce their employer's failure to comply with the requirements of the Act.

140.    N.J.S.A 34:11-56a25 expressly provides that an agreement between the employer and employee to work for less than the wages required by the Act is not a defense to an action seeking to recover those unpaid wages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, demand entry of an Order entering judgment in favor of Plaintiffs and providing the following relief:

A.    Requiring Defendants to file with this Court and furnish to counsel a list of all FLSA Class members and their last known e-mail and mailing addresses, who worked in the states of Massachusetts, Virginia, Rhode Island, Connecticut, Delaware, Maryland, New Jersey, New York, Pennsylvania, and Washington D.C.;

B.      Authorizing Plaintiffs' counsel to issue notice by both first class U.S. mail and e-mail at the earliest possible time to FLSA Class members, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit.

C.      Certifying the Pennsylvania Class under Fed. R. Civ. P. 23(b)(3) with Plaintiffs Donoghue, Kicklighter and Daiello as Class Representatives;

D.      Certifying the New Jersey Class under Fed. R. Civ. P. 23(b)(3) with Plaintiffs Adams and Barrett as Class Representative;

E.      Appointing Stephan Zouras, LLP to serve as Class Counsel for all classes;

F.      Declaring and find that Defendants willfully violated the overtime provisions of the FLSA, MWA, WPCL and NJWHL;

G.      Awarding all available compensatory damages on Plaintiffs' claims, including all overtime compensation owed, in an amount according to proof;

H.      Awarding all available liquidated damages on Plaintiffs' FLSA and WPCL claims in an amount equal to all compensatory damages, including all overtime compensation owed;

I.      Awarding interest on all overtime compensation due accruing form the date such amounts were due;

J.      Awarding a reasonable attorneys' fee and reimbursement of all costs and expenses incurred in litigating this action;

K.      Awarding equitable and injunctive relief precluding Defendants from continuing the polices, practices and actions pled in this Complaint;

L.      Granting leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and,

M.      Providing such further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through their undersigned counsel, hereby demand a trial by jury in the above-captioned matter.

Respectfully submitted,

Dated:  September 1, 2016          By:     */s/ David J. Cohen*
                                          David J. Cohen
                                          **Stephan Zouras, LLP**
                                          604 Spruce Street
                                          Philadelphia, PA 19106
                                          215-873-4836
                                          312-233-1560 (fax)

                                          Ryan F. Stephan
                                          Andrew Ficzko
                                          **Stephan Zouras, LLP**
                                          205 N. Michigan Avenue, Suite 2560
                                          Chicago, Illinois 60601
                                          312-233-1550
                                          312-233-1560 (fax)

                                          *Counsel for Plaintiffs and the Putative*
                                          *Collective / Class Members*

28